J-A03017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ANNA HOBAN (AKA "NANCY), AN INCAPACITATED PERSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ANNA HOBAN, AN INCAPACITATED PERSON | |
| | No. 1036 EDA 2015 |

Appeal from the Decree March 31, 2015
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): OC#2014-X3309

BEFORE: GANTMAN, P.J., MUNDY, J., and DUBOW, J.

MEMORANDUM BY MUNDY, J.:                    **FILED APRIL 13, 2016**

Appellant, Anna Hoban, appeals from the March 31, 2015 decree, affirming the adjudication of Ms. Hoban as a totally incapacitated person, entered after a review hearing of the orphans' court's November 4, 2014 order. After careful review, we affirm.

The facts of this case, as summarized from the certified record, are as follows. On December 9, 2013, Ms. Hoban, an 84-year-old retired chemist, was living alone when she suffered from a fall. Responding emergency medical personnel took her to Abington Memorial Hospital in Montgomery County. On December 11, 2013, she was discharged from Abington Memorial and then admitted to The Landing at Willow Grove (The Landing), an independent living facility, after the Montgomery County Office of Aging

and Adult Services determined that she could not return to her home, because the house was not in a habitable condition.

Specifically, James Salanik, an Abington Township code enforcement officer, testified Ms. Hoban's "house was in disarray" on December 9, 2013. N.T., 11/4/14, at 11. He elaborated that it was difficult to maneuver throughout the house because of all the clutter. *Id.* In fact, the police and medical personnel had trouble taking her from the house because of the mess. *Id.* Additionally, Ms. Hoban's bed sheets were heavily soiled. *Id.* Her cats were urinating and defecating freely throughout the house. *Id.* There was no running water or working plumbing, and Ms. Hoban "was using the bathtub and five-gallon buckets to relieve herself." *Id.* The heating system was also not functioning, and only "little electric space heaters" were heating the house. *Id.* Further, the refrigerator was not working. *Id.* Moreover, there was a large hole in the second-story floor above the kitchen. N.T., 10/28/14, at 26. The Abington Township code enforcement office sent Ms. Hoban a letter stating that the house was not habitable, and informing her of the measures she needed to take, including cleaning and restoring the heating and plumbing. N.T., 11/4/14, at 16. Abington Township considers the house condemned and has boarded it up. N.T., 10/28/14, at 14.

After being admitted to The Landing, Ms. Hoban remained determined to rehabilitate her house and return to it. Ms. Hoban explained that she

contacted state representative Madeleine Dean, who was able to arrange for Mr. Salanik to permit Ms. Hoban to access the house to attempt to clean it and make repairs. *Id.* at 62; N.T., 11/4/14, at 16-17. However, despite Ms. Hoban's efforts, as of October 29, 2014, the house remained uninhabitable. N.T., 11/4/14, at 18-19. Mr. Salanik noted that the electricity did not work, and he was unable to access the breaker panel in the basement because furniture and debris were blocking it. *Id.* at 18. The plumbing was still not working, and there was no running water. Further, the heating company shut off the heater that they had replaced because the pipes circulating water to the radiators froze. *Id.*

Moreover, Ms. Hoban does not have the financial resources to rehabilitate the house. Her total monthly income from Social Security and her civil service annuity is $1,524.72. N.T., 2/19/15, at 22-23. She has no other liquid assets. N.T., 10/28/14, at 74-75. Her monthly bill at The Landing is $2,130.00, and she owed $27,000.00 as of February 2015. N.T., 2/19/15, at 23. Her monthly mortgage payment is approximately $800.00. N.T., 10/28/14, at 65. Moreover, the mortgage is underwater. Ms. Hoban owes $187,000.00 on the mortgage, but the house has been valued at $70,000.00 to $80,000.00 in its current state of disrepair. N.T., 2/19/15, at 25. As of February 2015, the mortgage company had delayed foreclosure, pending the outcome of these guardianship proceedings.

The orphans' court detailed the procedural history of this case as follows.

> On September 19, 2014, The Landing at Willow Grove (hereinafter "The Landing"), a long-term care facility located in Willow Grove, Montgomery County, petitioned [the orphans' court] for an adjudication of incapacity and the appointment of plenary guardians for Anna Hoban, an 84 year old resident of the facility. Upon the [orphans'] court being advised Ms. Hoban wished to contest the petition, Jacqueline J. Shafer, Esquire, was appointed as counsel for her on October 1, 2014. The matter proceeded to hearings on October 28, and November 4, 2014. At the conclusion of the hearings, [the orphans' court] determined that Ms. Hoban suffered from moderate dementia and adjudicated her a totally incapacitated person. Adjustments, Inc., through its principal Kalpana Doshi, was appointed plenary permanent guardian of the person and estate of Ms. Hoban.

> On November 10, 2014, Ms. Hoban filed a timely appeal from the adjudication of incapacity.[1] Shortly thereafter, counsel for Ms. Hoban advised the [orphans'] [c]ourt that rather than pursue the appeal, she and Ms. Hoban would prefer that the [orphans'] [c]ourt appoint another professional to conduct an independent evaluation of Ms. Hoban and hold a review hearing. Pursuant to the [orphans'] [c]ourt's agreement to do so, the appeal was discontinued as of December 26, 2014.

> On January 9, 2015, [the orphans'] [c]ourt appointed Kenneth R. Carrol, Ph.D., a clinical psychologist, to perform an evaluation of Ms. Hoban. A review hearing was held at The Landing on February 19, 2015. At the conclusion of that hearing, [the orphans'] [c]ourt announced its intention to affirm its earlier decision adjudicating Ms. Hoban a totally incapacitated person. [The orphans' court's] final decree issued March 30, 2015, expressly affirmed the findings at the

- 4 -

conclusion of the earlier hearings and the terms of [the orphans'] [c]ourt's final decree issued November 4, 2015.

_____

[1] This appeal was docketed at [] 3363 EDA [2014].

Orphans' Court Opinion, 6/4/15, at 1-2 (footnote in original).  On April 7, 2015, Ms. Hoban filed a timely notice of appeal.[1]

On appeal, Ms. Hoban presents the following issues for our review.

    A. Whether the Montgomery County [o]rphans' [c]ourt erred in adjudicating Anna Hoban as an [i]ncapacitated [p]erson without having received evidence on whether a less restrictive alternative to a plenary guardianship of the person and of the estate existed[?]  20 Pa.C.S.A. § 5502.

    B. Whether the Montgomery County [o]rphans' [c]ourt erred in failing to consider whether Anna Hoban could understand and execute a power of attorney[?]  20 Pa.C.S.A. § 5601.

    C. Whether the Montgomery County [o]rphans' [c]ourt erred in failing to consider whether Anna Hoban could execute an [a]dvanced [d]irective for [h]ealthcare or [l]iving [w]ill[?]  20 Pa.C.S.A. § 5422.

    D. Whether the Montgomery County [o]rphans' [c]ourt erred in failing to consider whether Anna Hoban could execute a [h]ealthcare [p]ower of [a]ttorney[?]  20 Pa.C.S.A. § 5452.

_____

[1] Ms. Hoban and the orphans' court have complied with Pennsylvania Rule of Appellate Procedure 1925.  Moreover, we note that The Landing advised us that it would not be filing a brief in this appeal.

Ms. Hoban's Brief at 2-3. We will address all the issues together because they are interrelated.

The decision to declare a person incapacitated and to appoint a guardian is within the discretion of the orphans' court, and we will reverse only for an abuse of that discretion. *In re Duran*, 769 A.2d 497, 506 (Pa. Super. 2001). An orphans' court abuses its discretion if it "has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Id.* (citation and internal quotation marks omitted). This Court will not, however, reweigh the evidence and substitute our judgment as long as the evidence "is sufficient in quality and quantity to sustain the [orphans' court's] finding of incompetency[.]" *In re Myers' Estate*, 150 A.2d 525, 526 (Pa. 1959) (citations omitted); *see also Estate of Haertsch*, 609 A.2d 1384, 1385 (Pa. Super. 1992).

Section 5501 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §§ 101-8815, defines an incapacitated person as follows.

### § 5501. Meaning of incapacitated person

"Incapacitated person" means an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety.

20 Pa.C.S.A. § 5501.

> A statute of this nature places a great power in the court. The court has the power to place total control of a person's affairs in the hands of another. This great power creates the opportunity for great abuse. **Myers' Estate**, [**supra**]. "Mental capacity and competency are to be presumed and before any person shall be deprived of the right to handle his or her own property and manage his or her affairs there must be clear and convincing proof of mental incompetency and such proof must be preponderating." **Id.**

**Estate of Haertsch**, **supra**, at 1386 (parallel citation omitted). "Once an individual has been found incapacitated within the meaning of 20 Pa.C.S.A. § 5501 … and in need of guardianship services, it then becomes the court's responsibility to appoint an individual to serve, granting limited or plenary powers consistent with the incapacitated person's needs." **Estate of Haertsch**, 649 A.2d 719, 720 (Pa. Super. 1994), *citing* 20 Pa.C.S.A. § 5511. "The selection of a guardian for a person adjudicated incapacitated lies within the discretion of the [orphans'] court whose decision will not be reversed absent an abuse of discretion." **In re Duran**, **supra**.

Ms. Hoban challenges the orphans' court's conclusion that she is totally incapacitated. Specifically, she contends that the evidence shows she effectively received and evaluated information, and she made a conscious decision to pay the mortgage on her house and her monthly bills instead of making payments to The Landing. Ms. Hoban's Brief at 21. Moreover, she argues that the appointment of a plenary guardian was not the least restrictive alternative. **Id.** at 22, *citing*, 20 Pa.C.S.A. § 5502. Instead, Ms.

Hoban asserts that the orphans' court should have permitted her to appoint a power of attorney, execute an advanced directive for healthcare, and designate a healthcare power of attorney.[2]  **Id.** at 22-24, *citing*, 20 Pa.C.S.A. §§ 5601, 5422, and 5452.

During the initial incapacity proceedings, in addition to extensive evidence on the condition of Ms. Hoban's house summarized above, two doctors who had independently evaluated Ms. Hoban testified.  The orphans' court summarized their testimony as follows.

> Paul R. Moyer, M.D., testified as to the results of his evaluation of Ms. Hoban.  … Dr. Moyer is a geriatrician who primarily takes care of patients in nursing homes.  He has been the medical director at seven facilities where he also acts as attending physician.  He met Ms. Hoban on October 17, 2014, at The Landing.  He was unable to review her medical records and was not provided with a list of medications she was taking.  The doctor's evaluation consisted of a detailed conversation with Ms. Hoban which lasted for somewhere between half an hour and one hour.  The doctor found Ms. Hoban oriented and aware of current events surrounding her own situation.  She was further able to give a personal history.  He found that she had "some mild memory loss."  Because Dr. Moyer found that Ms. Hoban was aware of pertinent facts, he could not say that she met the criteria for incapacity.  But, he expressed serious concern about her ability to execute a plan

_____

[2] Ms. Hoban did not raise the issue of less restrictive alternatives to plenary guardianship to the orphans' court until she filed her Rule 1925(b) concise statement.  The trial court addressed those arguments in its opinion.  We decline to find waiver on the issue of alternatives to guardianship because the express purpose of the guardianship chapter is to impose the least restrictive alternative on an incapacitated person.  20 Pa.C.S.A. § 5502.

for her own well-being, for her own maintenance, and for her own living arrangements. Because of those concerns, he felt that she might need a guardian. Asked about Ms. Hoban's repeated efforts to get back into her residence, the doctor replied that her actions spoke to a judgment issue and worried him to the point that he believed she was marginally incapacitated. He did add that this was a hard call.

…

Kenneth B Goldberg, Psy.D., … performed a neurophysiological evaluation of Ms. Hoban at Holy Redeemer Hospital on August 4, 2014 pursuant to a referral from her physician[.] After interviewing Ms. Hoban and care staff, Dr. Goldberg administered multiple tests that included the Mattis Dementia Rating Scale, the Wechsler Adult Intelligence Scale (logical memory 1 and 2 subtests), the California verbal learning test (short form), the Boston naming test, the controlled word association test, the animal naming test, the clock drawing test, judgment of line orientation test, the trail-marking test, and the geriatric depression scale. He said he concluded that Ms. Hoban suffered from deficits in executive functioning, visual memory, visual scanning, complex verbal learning, and verbal fluency. Her scores placed her in the first, second (twice), sixth, seventh, eighth, and sixteenth percentiles based on a population of 84 year old females. Dr. Goldberg testified that Ms. Hoban had arrived two hours early for the evaluation and was disoriented in the hospital. He formed a diagnosis of moderate dementia and concluded that Ms. Hoban has limited insight into her condition and the extent of her deficits. He opined that she cannot safely manage her healthcare decisions or her finances and that she meets the definition of incapacity under Pennsylvania's guardianship statute.

On cross-examination, Dr. Goldberg acknowledged that Ms. Hoban had complained that she was cold in her evaluation room and that he

- 9 -

adjusted the heat upward for her. He explained that his diagnosis of dementia was subcortical as opposed to cortical, which makes it likely to be the result of a cerebral vascular accident (stroke) or a vascular condition rather than an Alzheimer's type dementia. As such, the dementia may be progressive or may be stable. Asked whether he felt Ms. Hoban needed a little help or a lot of help, Dr. Goldberg replied "A lot of help."

Orphan's Court Opinion, 6/4/15, at 4-5, 7-8 (citations omitted). Immediately following the November 4, 2014 hearing, the trial court adjudicated Ms. Hoban totally incapacitated. At the review hearing, on February 19, 2015, Kenneth Carroll, Ph.D, a licensed clinical psychologist that the orphans' court appointed to conduct a third evaluation of Ms. Hoban, testified as follows.

Counsel stipulated to the qualifications of Dr. Carroll as an experienced clinical psychologist with a specialization in geriatric cases. He testified that he evaluated Ms. Hoban on January 16, 2015 at The Landing. Dr. Carroll administered the Folstein mini-mental state exam and supplemented that with a number of other tests primarily designed to assess executive function. These included the similarities test, the Weschler Adult Intelligence Scale, and a comprehension subtest from that scale. He also administered a clock drawing test, the animal naming test, and the geriatric depression scale following a lengthy interview with Ms. Hoban. Dr. Carroll testified that Ms. Hoban is a retired research chemist who is very intelligent, bright, and did well on most of the tests that were administered. On the Folstein exam, she scored 27 out of 30. Although she did well on the similarities test, she did not do as well when asked to interpret proverbs. She also had difficulties on some comprehension questions. She was unable to draw a clock accurately which Dr. Carroll characterized as significant. Dr. Carroll

- 10 -

explained that Ms. Hoban does not appreciate how dire her circumstances had become when she was living at home and that this represents executive dysfunction and an inability to access [sic] situations accurately. For instance, he showed her some of the photos from her home and her assessment of them was inaccurate. Dr. Carroll said another symptom of her executive dysfunction is the inability to plan, recognize problems, and figure out solutions. Her plans were vague. She had not decided what she wants to do, she talked about having someone come to live with her but has not pursued that. She said she may or may not sell the house. Her answers exhibited an obvious absence of purpose. Although Ms. Hoban was able to identify the sources of her income, she could not explain how she got into serious financial difficulty and did not seem concerned about that. Dr. Carroll opined that Ms. Hoban is an incapacitated person, that it is a total incapacity, and her determination to return to her house would present a life-threatening situation.

Orphans' Court Opinion, 6/4/15, at 9-10 (citations omitted). At the February 19, 2015 review hearing, Kalpana Doshi also testified that Ms. Hoban's physician opined that Ms. Hoban should not be driving. *Id.* at 11. Ms. Doshi's opinion was that Ms. Hoban's insistence on returning to her house is impossible because it is not safe and she cannot afford the necessary repairs. *Id.*

The orphans' court found that "[t]he expert testimony clearly established [] Ms. Hoban is totally incapacitated." *Id.* at 12. The orphans' court also concluded that "any of the traditional less restrictive alternatives (power of attorney/health care power of attorney) would be ineffective as Ms. Hoban would undoubtedly revoke any such power as soon as her agent

made decisions inconsistent with her own unrealistic plans. … Regrettably, there is no realistic alternative to [] plenary guardianship[.]" ***Id.***

Here, three experts in geriatric mental health testified that Ms. Hoban was incapacitated. Ms. Hoban's overwhelming desire to return to her home demonstrated her compromised judgment. The evidence showed that her home was not in a habitable condition and her return to it would be a danger to her health and safety. Further, Ms. Hoban cannot afford to make all of the necessary repairs due to her financial situation.

Ms. Hoban argues that her payment of the mortgage, utilities, and bill for the new heater, instead of the outstanding bill for The Landing, reflected that she was capable of making conscious choices regarding her finances. Ms. Hoban's Brief at 18. However, those decisions further support the orphans' court's finding that despite the impossibility of returning to her home, "[s]he rationalized away all the concerns expressed by others as well as the professional evaluation testimony. … Sadly, Ms. Hoban showed a total inability to understand her situation, accept her limitations, and benefit from the assistance of others." Orphans' Court Opinion, 6/4/15, at 12. It also displays that there are no less restrictive alternatives available to plenary guardianship because Ms. Hoban would revoke any alternative form of guardianship or power of attorney when it became incompatible with her

unrealistic goal of returning to her home.[3]  Our review of the record thus demonstrates the evidence is sufficient to sustain the orphans' court's finding of incompetency.  **See Myers' Estate**, **supra**.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion in adjudicating Ms. Hoban totally incapacitated.  **See Duran**, **supra**.  Therefore, we affirm the orphans' court's March 31, 2015 decree.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/13/2016

---

[3] We agree with the orphans' court that "[Ms. Hoban] may be able to execute a valid advance directive for health care and nothing in the orphans' court's decree prohibits this."  Orphans' Court Opinion, 6/4/15, at 12.  We note that our decision is without prejudice to Ms. Hoban's right to execute an advance directive for health care.